# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR LUIS CASTILLO, | : | Civil No. 3:17-cv-2271 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| PATTI MANFRE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Hector Luis Castillo ("Plaintiff"), an inmate formerly housed at the Monroe County Correctional Facility, in Stroudsburg, Pennsylvania, ("MCCF"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining Defendants are Patti Manfre, and Vincent Cardenas.[1] (Id.).

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17). Despite being directed to file a brief in opposition to Defendants' motion to dismiss (Doc. 20, ¶ 2), Plaintiff failed to respond to the motion and the time for responding has now passed.[2] In the absence of any timely

---

[1] By Order dated January 5, 2018, the Court dismissed the Monroe County Correctional Facility as a party to this action. (Doc. 9).

[2] Plaintiff was cautioned that failure to file a brief in opposition to Defendants' motion would result in the motion being deemed unopposed. (Doc. 20, ¶ 2) (see also M.D. Pa. Local Rule 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief ... Any party who fails to comply with this rule shall be deemed not to oppose such motion.")).

response by Plaintiff, the motion is deemed ripe for resolution. For the reasons set forth below, the Court will grant the motion to dismiss.

## I. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations and

quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Complaint

Plaintiff alleges that on December 6, 2017, he was "assaulted, discriminated by Monroe County Correctional Facility." (Doc. 1, p. 6). He claims that an unidentified female correctional officer video recorded him without his consent. (*Id.*). Plaintiff alleges that Defendant Manfre "did not like the way [he] looked at her" after he handed her a request slip, and she ordered Defendant Cardenas to lock down Plaintiff in his cell for twenty-four hours. (*Id.*). Plaintiff asserts that he is schizophrenic and was traumatized by being locked down in his cell. (*Id.*). Plaintiff alleges that some of his property was stolen during a cell transfer, and that Defendant Cardenas threw his belongings on the floor of the cell. (*Id.*). Plaintiff further asserts that he requires a bottom bunk, however the bottom bunk in his cell was occupied. (*Id.* at pp. 6-7). Defendant Cardenas allegedly provided him with a mattress on the floor. (*Id.*).

Plaintiff alleges that other unidentified officers denied his visitation requests while he was in the Restrictive Housing Unit ("RHU"), and other unnamed officers served him non-diabetic food even though he is diabetic. (*Id.* at p. 7). Plaintiff asserts that he was not provided a cup for drinking, and was forced to drink from a soup bowl. (*Id.*). Plaintiff avers that the facility did not provide adequate treatment for his mental health needs. (*Id.*).

For relief, Plaintiff requests "a settlement." (*Id.* at p. 4).

## III. Discussion

4

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Placement in Disciplinary Segregation

To the extent that Plaintiff's placement in disciplinary segregation was either administrative or punitive, the relevant inquiry is whether the placement violated his right to due process. The Fourteenth Amendment of the United States Constitution provides, in pertinent part: "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest

exists, and if so, the next step is to define what process is mandated to protect it. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). An inmate does not possess a liberty interest under the Due Process Clause to be classified in the general population of a prison. *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995). Moreover, prison conditions do not impact a protected liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Id.* at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." *McKeithan v. Jones*, 212 F. App'x 129, 130 (3d Cir. 2007) (citing *Asquith v. Dep't of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999); *Griffin v. Vaughn*, 112 F.3d 703, 706 n. 2 (3d Cir. 1997)). In addition, an inmate placed in administrative custody for a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin*, 112 F.3d at 709.

In *Griffin*, the Third Circuit Court found that confinement of a prisoner in restrictive housing for fifteen months did not implicate a constitutionally protected liberty interest. *Id.* at 706. *See also Thomas v. Rosemeyer*, 199 F. App'x 195 (3d Cir. 2006) (270 days in restrictive housing unit not atypical or significant hardship). The *Griffin* Court further stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that the failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

*Griffin*, 112 F.3d at 706.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months are not uncommon. *Id.* at 708. Thus, the *Griffin* Court held that an inmate's transfer to, and confinement in, administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id.* *See also Williams v. Wickiser*, 2007 WL 3125019, at *8 (M.D. Pa. 2007) (five years in Restricted Housing Unit is not atypical and significant hardship); *Francis v. Dodrill*, 2005 WL 2216582, at *3-5 (M.D. Pa. 2005) (inmate's placement in the Special Management Unit does not implicate inmate's liberty interests or due process rights since such confinement does not constitute an atypical and significant hardship).

In the instant action, Plaintiff alleges that he was "locked down" in his cell for twenty-four hours for disciplinary reasons. (Doc. 1, p. 6). Plaintiff has not implicated a due process claim because any restrictions in disciplinary segregation do not impose atypical and significant hardships on Plaintiff in relation to the ordinary incidents of prison life. *See Griffin*, 112 F.3d at 706. Accordingly, Defendants motion will be granted with respect to this

claim.

## B. Sleeping on a Floor Mattress

The Eighth Amendment protects prison inmates from cruel and unusual punishment. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.*

Importantly, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). There is no "constitutional right to be free from the use of floor mattresses." *Hubbard v. Taylor*, 538 F.3d 229, 236, n.6 (3d Cir. 2008) (holding that under the totality of the circumstances, the pretrial detainees were not unconstitutionally punished in violation of the Fourteenth Amendment by being triple-celled and forced to sleep on floor mattresses for three to seven months), *citing Union County Jail*

8

Inmates v. Di Buono, 713 F.2d 984, 987 (3d Cir. 1983); Lindsey v. Shaffer, 411 F. App'x 466, 467-68 (3d Cir. 2011) (concluding that the prisoner's section 1983 claim that he was subjected to cruel and unusual punishment when forced to sleep on a mattress on the floor of his cell for six to seven weeks lacked merit because there was no evidence that this practice deprived him of a sanitary living environment or caused him harm).

Plaintiff does not aver that he was denied a mattress, that his cell conditions were unsafe, or that he suffered any harm. Instead, Plaintiff states that he was assigned a bottom bunk status, the bottom bunk in his cell was occupied and, therefore, prison officials provided a floor mattress to accommodate his bottom bunk requirement. Plaintiff's claim that he was required to sleep on a mattress on the floor does not rise to the level of a deprivation of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Consequently, Plaintiff's Eighth Amendment claim related to the use of a floor mattress will be dismissed for failure to state a claim.

### C. Personal Property Claim

Plaintiff claims that some of his personal property was stolen and his belongings were "thrown on the floor" by Defendant Cardenas while he was confined at the MCCF. (Doc. 1, pp. 6-7). However, Plaintiff also alleges that post-deprivation remedies were available. (Id. at p. 2).

The United States Supreme Court has held that neither negligent nor intentional

deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 530, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Third Circuit Court of Appeals has "held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process." *Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir. 2009) (citing *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). *See also Miller v. DiGuglielmo*, 2010 U.S. Dist. LEXIS 127096, 28-29 (E.D. Pa. 2010) (concluding that a "prisoner's 'failure to [properly] avail himself of such remedy does not affect its adequacy as a post-deprivation remedy'"), *citing Griffin-El v. Beard*, 2010 U.S. Dist. LEXIS 42453, *21-22, 2010 WL 1837813 (E.D. Pa. 2010). Additionally, "the failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Gordon v. Vaughn*, 1999 U.S. Dist. LEXIS 7060, at *4, 1999 WL 305240 (E.D. Pa. May 12, 1999) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995)).

Moreover, Plaintiff has another post-deprivation remedy, namely a state conversion action. *See Crosby v. Piazza*, 2012 WL 641938 (3d Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative process, he may still file a state court tort action"); *Reavis v. Poska*, 2010 U.S. Dist. LEXIS 60020, *21-22 (W.D. Pa.

2010) ("Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without due process" because the DOC's "internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies."); 42 Pa.C.S.A. § 8522(a), (b)(3).

Consequently, Plaintiff cannot prevail on a claim for the confiscation of, or damage to, his personal property. *See Gannaway v. Berks County Prison*, 439 F. App'x 86, 92 (3d Cir. 2011) (per curiam), *citing Hudson*, 468 U.S. at 533; *Tillman*, 221 F.3d at 422. Therefore, this claim will be dismissed.

### D. Qualified Immunity

Defendants invoke the defense of qualified immunity in their motion to dismiss. (Doc. 18, p. 13). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official

reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp*, 669 F.3d at 159 (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because Plaintiff has failed to establish a violation of a constitutional right, Defendants are protected by qualified immunity.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston*

v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). In the matter sub judice, the flaws in Plaintiff's constitutional claims against Defendants Manfre and Cardenas are both legal and factual, and thus incurable. For this reason, the Court concludes that curative amendment would be a futile endeavor.

V. **Conclusion**

Based on the foregoing, Defendants' motion (Doc. 17) to dismiss will be granted. A separate Order shall issue.

Dated: May 23, 2018

Robert D. Mariani
United States District Judge

13